**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| STREAMSCALE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 6:23-cv-576 |
| | ) | |
| CLOUDERA, INC., | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff StreamScale, Inc. ("Plaintiff" or "StreamScale") files this Complaint for patent infringement against Defendant Cloudera, Inc. ("Cloudera") alleging as follows:

**NATURE OF SUIT**

1.      This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

2.      StreamScale owns multiple patents relating to accelerated erasure coding. StreamScale's patented technology is a cornerstone of modern data storage, especially cloud-based data storage.

3.      Data storage protection from loss used to be a matter of replicating the data. Data replication resulted in redundant data drives, and that redundancy provided an enhanced measure of data availability along with some measure of fault tolerance. For example, if one of the data drives were to be corrupted, the original data would still be available on a redundant disk.

4.      Data replication is highly inefficient and no longer commercially practicable. Take a triple replication scheme for example. If a user desired to save some quantum of data, say 100 GB, it would require 300 GB of data storage to save that 100 GB of data. That is only a 33% utilization of storage capacity. And that measure of efficiency gets worse as the amount of

redundancy in a system increases.  Triple replication is also incredibly expensive because you need to buy three times the capacity of your original data.  Triple replication further requires the additional, redundant capacity to be packaged, powered, and serviced.

5.      Systems that employ accelerated erasure coding as patented by StreamScale enable scalable, high-performance data storage systems that can outperform other systems and do so at lower cost.  StreamScale's inventions significantly reduce storage overhead while achieving similar or better fault tolerance than prior systems and methods, and are a quantum leap forward from prior systems.

6.      At a high level, erasure coding uses specially designed systems to transform a block of original data to be stored into one or more blocks of encoded data that can be distributed across numerous storage devices or drives.  The original data can be reconstructed from the encoded data, even if some portions of the original data are lost or unavailable.  The data encoding and decoding processes are time and energy intensive.  If erasure coding is performed without appropriately configured computers using appropriately organized instructions, it can appear to have only limited practical applicability.  Indeed, the widespread view in the industry before the work of StreamScale was that there was no way to employ erasure coding at high speeds, including so-called "cache line speeds."

7.      With its accelerated erasure coding technology, StreamScale achieved what was thought to be impossible.  StreamScale achieved in one embodiment more than an order of magnitude performance increase in actual system performance.  Rather than remaining an unobtainable goal with very limited application, storage systems based on StreamScale's accelerated erasure coding immediately became practical and thus had newfound applicability to the data storage industry, among others.

8.     The innovations described in—and protected by—StreamScale's Patents-in-Suit have been incorporated into products and services offered by Cloudera.

## PARTIES

9.     Plaintiff StreamScale, Inc. is a corporation duly organized and existing under the laws of the State of Texas, having a principal place of business at 7215 Bosque Blvd., Suite 203, Waco, Texas 76710.  StreamScale is the owner of record of the Patents-in-Suit in this action.

10.     Defendant Cloudera, Inc. ("Cloudera") is a corporation organized under the laws of the State of Delaware.  Cloudera maintains an office in this judicial district at 515 Congress, Suite 1300, Austin, Texas 78701.  Cloudera can be served with process through its registered agent in the State of Texas, Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.

## JURISDICTION AND VENUE

11.     This action arises under the patent laws of the United States, 35 U.S.C. § 101, *et seq.*  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

12.     Cloudera is subject to personal jurisdiction in this Court.  This Court has personal jurisdiction over Cloudera because Cloudera has engaged in continuous, systematic, and substantial activities within this State, including substantial marketing and sales of products and services within this State and this District.  Furthermore, upon information and belief, this Court has personal jurisdiction over Cloudera because Cloudera has committed acts giving rise to StreamScale's claims for patent infringement within and directed to this District.

13.     Upon information and belief, Cloudera has conducted and does conduct substantial business in this forum, directly and/or through subsidiaries, agents, representatives, or intermediaries, such substantial business including but not limited to: (i) at least a portion of the acts of infringement alleged herein; (ii) purposefully and voluntarily placing one or more

infringing products and services into the stream of commerce with the expectation that they will be purchased by consumers in this forum; and/or (iii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this judicial district.  Thus, Cloudera is subject to this Court's specific and general personal jurisdiction pursuant to due process and the Texas Long Arm Statute.

14.     Upon information and belief, Cloudera has committed acts of infringement in this District and has one or more regular and established places of business within this District under 28 U.S.C. § 1400(b).  Thus, venue is proper in this District under 28 U.S.C. § 1400(b).

15.     Cloudera maintains a permanent physical presence within this District.   For example, it maintains at least the office location at 515 Congress, Suite 1300, Austin, Texas 78701. Cloudera employs numerous employees who work at Cloudera's location(s) in this District.

16.     Cloudera's location(s) in this District, including at least those identified in paragraph 15 above, are regular and established places of business under 28 U.S.C. § 1391, 28 U.S.C. § 1400(b), and *In re Cray, Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).

     a.     Cloudera's location(s) in this District, including at least those identified in paragraph 15 above, are physical, geographical location(s) in this District.  Each office location comprises one or more buildings or office spaces from which the business of Cloudera is carried out.  The location(s) are set apart for the purpose of carrying out Cloudera's business, including but not limited to, making, using, selling, offering for sale, and/or supporting infringing products and services.  Indeed, Cloudera itself advertises its physical location(s) in this District as places of its business.

b.      Cloudera's location(s) in this District, including at least those identified in paragraph 15 above, are regular and established.

c.      Cloudera's location(s) in this District, including at least those identified in paragraph 15 above, are places of business of Cloudera.  Cloudera conducts business from its location(s) in this District, including at least those identified in paragraph 15 above, including but not limited to, making, using, selling, offering for sale, and/or supporting infringing products and services.

d.      Cloudera's location(s) in this District, including at least those identified in paragraph 15 above, are physical, geographical location(s) in this District from which Cloudera carries out its business.

e.      Cloudera employees work at Cloudera's location(s), including at least those identified in paragraph 15 above.  Upon information and belief, these Cloudera employees are regularly and physically present at Cloudera's location(s), including at least those identified in paragraph 15 above, during business hours and they are conducting Cloudera's business while working there.

## FACTUAL ALLEGATIONS

### I.      PATENTS-IN-SUIT

17.      U.S. Patent No. 8,683,296 ("the '8-296 Patent") is entitled "Accelerated Erasure Coding System and Method."  The '8-296 Patent duly and legally issued on March 25, 2014, from U.S. Patent Application No. 13/341,833, filed on December 30, 2011.  StreamScale is the current owner of all rights, title, and interest in and to the '8-296 Patent.  A true and correct copy of the '8-296 Patent is attached hereto as Exhibit A and is incorporated by reference herein.

18.      U.S. Patent No. 9,160,374 ("the '374 Patent") is entitled "Accelerated Erasure Coding System and Method."  The '374 Patent duly and legally issued on October 13, 2015, from

U.S. Patent Application No. 14/223,740, filed on March 24, 2014.    The '374 Patent is a continuation of U.S. Patent Application No. 13/341,833, filed on December 30, 2011, now U.S. Patent No. 8,683,296.  The '374 Patent is entitled to the benefit of the December 30, 2011 filing date of application No. 13/341,833.    StreamScale is the current owner of all rights, title, and interest in and to the '374 Patent.  A true and correct copy of the '374 Patent is attached hereto as Exhibit B and is incorporated by reference herein.

19.    U.S. Patent No. 9,385,759 ("the '759 Patent") is entitled "Accelerated Erasure Coding System and Method."  The '759 Patent duly and legally issued on July 5, 2016, from U.S. Patent Application No. 14/852,438, filed on September 11, 2015.    The '759 Patent is a continuation of U.S. Patent Application No. 14/223,740, filed on March 24, 2014, now U.S. Patent No. 9,160,374.    U.S. Patent No. 9,160,374 is a continuation of U.S. Patent Application No. 13/341,833, filed on December 30, 2011, now U.S. Patent No. 8,683,296.  The '759 Patent is entitled to the benefit of the December 30, 2011 filing date of application No. 13/341,833. StreamScale is the current owner of all rights, title, and interest in and to the '759 Patent.  A true and correct copy of the '759 Patent is attached hereto as Exhibit C and is incorporated by reference herein.

20.    U.S. Patent No. 10,291,259 ("the '259 Patent") is entitled "Accelerated Erasure Coding System and Method."  The '259 Patent duly and legally issued on May 14, 2019, from U.S. Patent Application No. 15/976,175, filed on May 10, 2018.  The '259 Patent is a continuation of U.S. Patent Application No. 15/201,196, filed on July 1, 2016, now U.S. Patent No. 10,003,358. U.S. Patent No. 10,003,358 is a continuation of U.S. Patent Application No. 14/852,438, filed on September 11, 2015, now U.S. Patent No. 9,385,759.  U.S. Patent No. 9,385,759 is a continuation of U.S. Patent Application No. 14/223,740, filed on March 24, 2014, now U.S. Patent

No. 9,160,374.   U.S. Patent No. 9,160,374 is a continuation of U.S. Patent Application No. 13/341,833, filed on December 30, 2011, now U.S. Patent No. 8,683,296.  The '259 Patent is entitled to the benefit of the December 30, 2011 filing date of application No. 13/341,833. StreamScale is the current owner of all rights, title, and interest in and to the '259 Patent.  A true and correct copy of the '259 Patent is attached hereto as Exhibit D and is incorporated by reference herein.  On or about February 23, 2021, StreamScale filed a Petition for Correction of Inventorship Under 37 C.F.R. § 1.324, including associated documentation and fees, with the United States Patent and Trademark Office requesting the correction of inventorship of the '259 Patent to include inventor Sarah Mann, who was not named as an inventor through error.  True and correct copies of that Petition and associated documentation are attached as Exhibit E, and that material is incorporated by reference herein.

21.   U.S. Patent No. 10,666,296 ("the '10-296 Patent") is entitled "Accelerated Erasure Coding System and Method."  The '10-296 Patent duly and legally issued on May 26, 2020, from U.S. Patent Application No. 16/358,602, filed on March 19, 2019.   The '10-296 Patent is a continuation of U.S. Patent Application No. 15/976,175, filed on May 10, 2018, now U.S. Patent No. 10,291,259.   U.S. Patent No. 10,291,259 is a continuation of U.S. Patent Application No. 15/201,196, filed on July 1, 2016, now U.S. Patent No. 10,003,358.   U.S. Patent No. 10,003,358 is a continuation of U.S. Patent Application No. 14/852,438, filed on September 11, 2015, now U.S. Patent No. 9,385,759.  U.S. Patent No. 9,385,759 is a continuation of U.S. Patent Application No. 14/223,740, filed on March 24, 2014, now U.S. Patent No. 9,160,374.   U.S. Patent No. 9,160,374 is a continuation of U.S. Patent Application No. 13/341,833, filed on December 30, 2011, now U.S. Patent No. 8,683,296.  The '10-296 Patent is entitled to the benefit of the December 30, 2011 filing date of application No. 13/341,833.

StreamScale is the current owner of all rights, title, and interest in and to the '10-296 Patent. A true and correct copy of the '10-296 Patent is attached hereto as Exhibit F and is incorporated by reference herein.

22.     Collectively, the '8-296 Patent, the '374 Patent, the '759 Patent, the '259 Patent, and the '10-296 Patent are referred to herein as the "Patents-in-Suit."

## II.     ACCELERATED ERASURE CODING INFRINGEMENT

23.     As further discussed below, Cloudera indirectly infringed—and continues to indirectly infringe—each of the Patents-in-Suit under 35 U.S.C. § 271(b) by inducing third parties to directly infringe at least one claim of each of the Patents-in-Suit including for example Cloudera's customers, in this District and elsewhere in the United States. Direct infringement is the result of activities performed by users of at least the Cloudera Data Platform ("CDP") that incorporate, among other features, a software program called Intel Intelligent Storage Acceleration Library ("ISA-L"), collectively referred to herein as the "Cloudera Infringing Products and Services."

24.     As further discussed below, Cloudera indirectly infringed—and continues to indirectly infringe—each of the Patents-in-Suit under 35 U.S.C. § 271(c) by contributing to third parties', including for example Cloudera's customers', direct infringement of at least one claim of each of the Patents-in-Suit, in this District and elsewhere in the United States. Direct infringement is the result of activities performed by users of at least the Cloudera Infringing Products and Services.

25.     Systems built by Cloudera with CDP or substantially similar technology including accelerated erasure coding ("EC") technology are the "EC Systems."

26.     Under typical configurations, the EC Systems that use the patented technology reduce storage cost by at least about 50% compared with triple replication. Upon information and

belief, Cloudera and its collaborators recognized that accelerated erasure coding can greatly reduce storage overhead without sacrificing data reliability, which makes erasure coding a quite attractive alternative for big data storage, particularly for cold data.

27.     StreamScale has previously filed a lawsuit against Cloudera alleging, among other things, that Cloudera directly infringes the Patents-in-Suit as a result of its making, using, offering to sell, and selling its Cloudera Data Hub ("CDH") product.  Cloudera packaged and shipped EC technology, including ISA-L, with CDH.  Upon information and belief, the EC technology in CDP is similar to CDH except that Cloudera does not "bundle" ISA-L with CDP.  Instead, Cloudera specifically instructs its customers to download ISA-L for use with CDP, and thereby infringe the Patents-in-Suit.

## III.   WIDESPREAD KNOWLEDGE OF STREAMSCALE'S PATENTS-IN-SUIT

28.     The United States Patent and Trademark Office published the patent application that ultimately led to the '8-296 Patent on July 4, 2013.  The very next day, July 5, 2013, StreamScale sent a letter to USENIX, a computing systems association, notifying USENIX of StreamScale's pending patent applications and providing USENIX with advance notice of StreamScale's intent to issue a press release that StreamScale's then-patent-pending technology.[1] Upon information and belief, others in the industry, including but not limited to Intel, learned of StreamScale and its patent applications as a consequence of the letter StreamScale wrote to USENIX.

29.     On July 10, 2013, while StreamScale awaited a response from USENIX, Intel publicly announced its excitement to support development of erasure code solutions.  Intel explained that erasure codes reduce the size of data on disk by up to half versus traditional

---

[1] Exhibit G, Letter from Michael S. Adler, Counsel for StreamScale, to USENIX (July 5, 2013).

replication, decreases costs by more than 50%, and reduces both hardware requirement costs and power and cooling costs.[2]  Intel explained that erasure code was a long overdue technology and Intel was excited to support, promote, and use it in cloud environments.[3]

30.     On July 23, 2013, StreamScale issued a press release noting that its technology is protected by then-pending patent applications and was not "open source."[4]

31.     Having received the July 5, 2013 letter that StreamScale sent to USENIX, and following consultation with its attorneys, USENIX chose to comply with StreamScale's request to remove certain papers and materials from its web site.

32.     On or about August 3, 2013, individuals began posting missives online regarding StreamScale and its patent portfolio.  Upon information and belief, H. Peter Anvin, an Intel employee, was aware of at least some of these online postings.  Indeed, upon information and belief, at least Mr. Anvin commented on at least some of these online postings, including but not limited to on or about August 9, 2013.

33.     Upon information and belief, in early March 2014, Intel employees again learned about StreamScale, its patented and patent-pending technology, and its relationship to ISA-L.  On March 10, 2014, upon information and belief, one or more Intel employees reviewed and collected a significant quantity of information about StreamScale, its attorneys, and its patent applications. Upon information and belief, one or more Intel employees visited a number of specific pages on StreamScale's   website,   including   (i) those   detailing   StreamScale's   then-pending-patent

---

[2] Exhibit H, Joe Arnold, Save Space: The Final Frontier—Erasure Codes with OpenStack Swift (July 10, 2013), *previously available at* https://swiftstack.com/blog/2013/07/10/erasure-codes-with-openstack-swift/.

[3] *Id.*

[4] Exhibit I, StreamScale Provides Notice of Ownership of Fastest Erasure Code Technology Disclosed at Fast '13 (July 23, 2013).

applications, (ii) those summarizing StreamScale's company history and technology, (iii) those making recent new and press releases available to the public, (iv) those identifying StreamScale's employees and attorneys, and (v) those hosting academic papers authored by StreamScale's employees. Furthermore, upon information and belief, one or more Intel employees accessed and downloaded electronic copies of one or more of StreamScale's patents or patent applications, at least from StreamScale's website.

34.     Indeed, upon information and belief, Intel was contacted in February or March 2014 and knew about potential issues involving StreamScale, StreamScale's patent-pending technology, and ISA-L. In August and September 2014, outside counsel for Intel corresponded with then-litigation counsel for StreamScale regarding a third-party subpoena StreamScale issued to Intel involving StreamScale's intellectual property rights. Thus, upon information and belief, by mid-to-late September 2014, Intel had knowledge of StreamScale, StreamScale's issued and pending patents and intellectual property rights, and their relevance to ISA-L.

35.     Separately, on or about March 5, 2015, Tushar Gohad, an Intel employee, indicated that Jerasure and GF-complete were strategically important. Specifically, Mr. Gohad requested that Jerasure and GF-complete be backported to an earlier version of software. By that time, one of the authors of GF-Complete had publicly stated that StreamScale asserts that the use of GF-Complete (particularly as part of Jerasure 2.0 or later) or any similar software, method or code for erasure coding infringes StreamScale's issued United States Patent No. 8,683,296.

36.     On or about March 20, 2015, Daisuke Kobayashi, a then-Cloudera Customer Operations Engineer, was informed that StreamScale "claim[ed]" that "Jerasure: GF-Complete

and Jerasure versions 2.0 and later" infringed United States Patent No. 8.683,296.[5]   Cloudera's

receipt of this notice was the direct result of StreamScale's efforts to inform the industry of its

patented technology.

37.     On or about April 29, 2015, counsel for StreamScale wrote on an online technical

board and asked that the Jerasure 2.0 and GF-Complete libraries that had been republished be

removed.[6]   The next day, April 30, 2015, upon information and belief, StreamScale's post and a

Techdirt article regarding StreamScale's patent rights were brought to the attention of Paul Luse,

another Intel employee, who responded "we are all well aware of the info you passed on :)"  Upon

information and belief, Mr. Luse then encouraged others to ignore StreamScale, indicating that

was always the best option.

38.     On information and belief, in March 2014, Intel invested over $700 million to buy

approximately an 18% ownership of Cloudera.

39.     As a result of this close relationship with Intel, Cloudera at least should have known

of, if not had direct knowledge of, the Patents-in-Suit well prior to the commencement of this

litigation.

40.     On or about March 2, 2021, StreamScale filed a complaint for patent infringement

in the United States District Court for the Western District of Texas (Civil Action No. 6:21-cv-

001998-ADA) against Cloudera for direct infringement of the Patents-in-Suit as a result of its

making, using, offer to sell, and selling of CDH (the "2021 Lawsuit").  Despite this complaint,

Cloudera did not cease its infringement.

---

[5] Exhibit J, March 20, 2015 Twitter Thread (machine-translated).

[6] Exhibit K, Michael A. O'Shea, counsel for StreamScale, post to Ubuntu entitled "StreamScale" (Apr. 29, 2015),
*available at* https://lists.ubuntu.com/archives/technical-board/2015-April/002100.html (last visited May 24, 2021).

41.     On or about July 15, 2021, StreamScale served Cloudera with its Preliminary Infringement Contentions in the 2021 Lawsuit, detailing how CDH directly infringed the Patents-in-Suit.  Despite receiving these Preliminary Infringement Contentions, Cloudera did not cease its infringement.

42.     On or about May 20, 2022, StreamScale served Cloudera with its Final Infringement Contentions in the 2021 Lawsuit, again detailing how CDH directly infringed the Patents-in-Suit.  Despite receiving these Final Infringement Contentions, Cloudera did not cease its infringement.

43.     On or about February 27, 2023, StreamScale served Cloudera with the Expert Report of Dr. Thomas M. Conte Regarding Infringement, detailing how CDH directly infringed the Patents-in-Suit.  Despite receiving this Expert Report, Cloudera did not cease its infringement.

## COUNT 1—INDIRECT INFRINGEMENT OF THE '8-296 PATENT

44.     StreamScale incorporates by reference the allegations set forth in Paragraphs 1–43 of this Complaint as though fully set forth herein.

45.     In violation of 35 U.S.C. §§ 271(b), Cloudera is and has been infringing one or more of the '8-296 Patent's claims, including at least Claims 1-4, and 34-36, indirectly by inducing the infringement of at least Claims 1-4, and 34-36 of the '8-296 Patent by third parties, including for example Cloudera's customers, in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by users of at least the "Cloudera Infringing Products and Services."

46.     Cloudera's affirmative acts of selling and/or distributing Cloudera Infringing Products and Services (or portions thereof), causing Cloudera Infringing Products and Services (or portions thereof) to be manufactured and distributed, providing instructive materials and information concerning operation and use of Cloudera Infringing Products and Services (or

portions thereof), including but not limited to instruction on how to download and use ISA-L with CDP to utilize EC technology, and providing maintenance/service for such products or services, induced Cloudera's customers to infringe at least Claims 1-4, and 34-36 of the '8-296 Patent. By and through these acts, Cloudera knowingly and specifically intended the users of Cloudera Infringing Products and Services to infringe at least Claims 1-4, and 34-36 of the '8-296 Patent. Cloudera (1) knew or should have known of the '8-296 Patent since at least 2015, but at a minimum, no later than March 2021 when StreamScale filed the 2021 Lawsuit, (2) performed and continues to perform affirmative acts that constitute induced infringement, and (3) knew or should have known that those acts would induce actual infringement of one or more of the '8-296 Patent's claims by users of Cloudera Infringing Products and Services.

47.     Cloudera actively markets and instructs its customers how to use EC Systems using CDP and how to download ISA-L for use with CDP. For example, Cloudera specifies to its customers how to "[r]un the commands…to install the isa-l library" and how to "[v]erfiy ISA-L is working."[7] Cloudera also offers its customers an "Installation Guide" on how to install the Cloudera Infringing Products and Services.[8] Upon information and belief, Cloudera further offers its customers technical support for the Cloudera Infringing Products and Services.

48.     As explained herein, Cloudera knew or should have known of the '8-296 Patent prior to this lawsuit being filed and had knowledge of the infringing nature of its activities, and the role of the Cloudera Infringing Products and Services in that infringement of the '8-296 Patent,

---

[7] *See, e.g.*, https://docs.cloudera.com/cdp-private-cloud-base/7.1.6/scaling-namespaces/topics/hdfs-ec-using-isa-l.html (last visited August 7, 2023).

[8] *See, e.g.*, https://docs.cloudera.com/cdp-private-cloud-base/7.1.5/installation/topics/cdpdc-installation.html (last visited August 7, 2023).

yet continues to induce infringement of at least Claims 1-4, and 34-36 of the '8-296 Patent by Cloudera's customers.

49.     Therefore, Cloudera has induced others to infringe one or more of the claims of the '8-296 Patent, including at least Claims 1-4, and 34-36.

50.     In violation of 35 U.S.C. § 271(c), Cloudera is and has been infringing one or more of the claims of the '8-296 Patent, including at least Claims 1-4, and 34-36, indirectly by contributing to the infringement of one or more of the claims of the '8-296 Patent, including at least Claims 1-4, and 34-36, by third parties, including for example Cloudera's customers, in this District and elsewhere in the United States.  Direct infringement by, for example, Cloudera's customers occurs by at least the use of the Cloudera Infringing Products and Services.

51.     Cloudera makes and sells software especially made or especially adapted to practice the invention claimed in the '8-296 Patent, including at least Claims 1-4, and 34-36, and that (i) is a material part of the invention and (ii) is not a staple article or commodity of commerce suitable for substantial non-infringing use at least because it is specifically designed to perform the claimed functionality.  Any other use of such hardware and/or software would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

52.     Therefore, Cloudera has contributed to the infringement by others of one or more of the claims of the '8-296 Patent, including at least Claims 1-4, and 34-36.

53.     Cloudera's infringement of one or more of the claims of the '8-296 Patent, including at least Claims 1-4, and 34-36, has been, and continues to be, willful.

54.     Cloudera has known of at least the '8-296 Patent since at least March 20, 2015 when Daisuke Kobayashi was informed that StreamScale was claiming that Jerasure: GF-Complete and Jerasure versions 2.0 and later infringed the claims of the '8-296 Patent.

55.     Cloudera also has known of the '8-296 Patent and Cloudera's infringement thereof since at least March 8, 2021 when Cloudera received a copy of StreamScale's Complaint for Patent Infringement in the 2021 Lawsuit.  While the 2021 Lawsuit related to Cloudera's CDH product, upon information and belief, the EC technology in CDP is similar to CDH except that Cloudera does not "bundle" ISA-L with CDP.  Instead, Cloudera specifically instructs its customers to download ISA-L for use with CDP, and thereby infringe the Patents-in-Suit.  Despite receiving the complaint in the 2021 Lawsuit, Cloudera did not cease its infringement.

56.     Cloudera obtained additional detailed knowledge of its infringement of the claims of the '8-296 Patent on or about July 15, 2021 when Cloudera received StreamScale's Preliminary Infringement Contentions in the 2021 Lawsuit, detailing Cloudera's infringement of at least Claims 1-4, and 34-36 of the '8-296 Patent, among other claims.  Despite receiving these Preliminary Infringement Contentions, Cloudera did not cease its infringement.

57.     Cloudera obtained additional knowledge of its infringement of the claims of the '8-296 Patent on or about May 20, 2022 when StreamScale served Cloudera with its Final Infringement Contentions in the 2021 Lawsuit, again detailing how CDH directly infringed the Patents-in-Suit.  Despite receiving these Final Infringement Contentions, Cloudera did not cease its infringement.

58.     Cloudera obtained additional knowledge of its infringement of the claims of the '8-296 Patent on or about February 27, 2023 when StreamScale served Cloudera with the Expert Report of Dr. Thomas M. Conte Regarding Infringement, detailing how CDH directly infringed the Patents-in-Suit.  Despite receiving this Expert Report, Cloudera did not cease its infringement.

59.     Despite knowing of the '8-296 Patent since at least as early as March 20, 2015, Cloudera has continued to infringe one or more claims of the '8-296 Patent.  At a minimum, the

facts plead herein show that Cloudera willfully blinded itself to the '8-296 Patent, and its infringement of the claims of the '8-296 Patent. The facts similarly show Cloudera subjectively believed with a high probability that the Cloudera Infringing Products and Services infringed but took deliberate action to avoid learning of its infringement.

60.     Therefore, Cloudera's infringement of the '8-296 Patent has been and continues to be willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate, entitling StreamScale to increased damages pursuant to 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

61.     Defendant's acts of infringement have caused damages to StreamScale, and StreamScale is entitled to recover from Defendant the damages sustained by StreamScale as a result of Defendant's wrongful acts in an amount to be determined at trial.

## COUNT 2—INDIRECT INFRINGEMENT OF THE '374 PATENT

62.     StreamScale incorporates by reference the allegations set forth in Paragraphs 1–61 of this Complaint as though fully set forth herein.

63.     In violation of 35 U.S.C. § 271(b), Cloudera is and has been infringing one or more of the '374 Patent's claims, including at least Claims 1, and 5–6, indirectly by inducing the infringement of at least Claims 1, and 5–6 of the '374 Patent by third parties, including for example Cloudera's customers, in this District and elsewhere in the United States. Direct infringement is the result of activities performed by users of at least the "Cloudera Infringing Products and Services."

64.     Cloudera's affirmative acts of selling and/or distributing Cloudera Infringing Products and Services (or portions thereof), causing Cloudera Infringing Products and Services (or portions thereof) to be manufactured and distributed, providing instructive materials and information concerning operation and use of Cloudera Infringing Products and Services (or

portions thereof), including but not limited to instruction on how to download and use ISA-L with CDP to utilize EC technology, and providing maintenance/service for such products or services, induced Cloudera's customers to infringe at least Claims 1, and 5–6 of the '374 Patent.  By and through these acts, Cloudera knowingly and specifically intended the users of Cloudera Infringing Products and Services to infringe at least Claims 1, and 5–6 of the '374 Patent.  Cloudera (1) knew or should have known of the '374 Patent since at least 2015, but at a minimum, no later than March 2021 when StreamScale filed the 2021 Lawsuit, (2) performed and continues to perform affirmative acts that constitute induced infringement, and (3) knew or should have known that those acts would induce actual infringement of one or more of the '374 Patent's claims by users of Cloudera Infringing Products and Services.

65.    Cloudera actively markets and instructs its customers how to use EC Systems using CDP and how to download ISA-L for use with CDP.  For example, Cloudera specifies to its customers how to "[r]un the commands…to install the isa-l library" and how to "[v]erfiy ISA-L is working."[9]  Cloudera also offers its customers an "Installation Guide" on how to install the Cloudera Infringing Products and Services.[10]  Upon information and belief, Cloudera further offers its customers technical support for the Cloudera Infringing Products and Services.

66.    As explained herein, Cloudera knew or should have known of the '374 Patent prior to this lawsuit being filed and had knowledge of the infringing nature of its activities, and the role of the Cloudera Infringing Products and Services in that infringement of the '374 Patent, yet

---

[9] *See, e.g.*, https://docs.cloudera.com/cdp-private-cloud-base/7.1.6/scaling-namespaces/topics/hdfs-ec-using-isa-l.html (last visited August 7, 2023).

[10] *See, e.g.*,  https://docs.cloudera.com/cdp-private-cloud-base/7.1.5/installation/topics/cdpdc-installation.html (last visited August 7, 2023).

continues to induce infringement of at least Claims 1, and 5–6 of the '374 Patent by Cloudera's customers.

67.    Therefore, Cloudera has induced others to infringe one or more of the claims of the '374 Patent, including at least Claims 1, and 5–6.

68.    In violation of 35 U.S.C. § 271(c), Cloudera is and has been infringing one or more of the claims of the '374 Patent, including at least Claims 1, and 5–6, indirectly by contributing to the infringement of one or more of the claims of the '374 Patent, including at least Claims 1, and 5–6, by third parties, including for example Cloudera's customers, in this District and elsewhere in the United States.  Direct infringement by, for example, Cloudera's customers occurs by at least the use of the Cloudera Infringing Products and Services.

69.    Cloudera makes and sells software especially made or especially adapted to practice the invention claimed in the '374 Patent, including at least Claims 1, and 5–6, and that (i) is a material part of the invention and (ii) is not a staple article or commodity of commerce suitable for substantial non-infringing use at least because it is specifically designed to perform the claimed functionality.  Any other use of such hardware and/or software would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

70.    Therefore, Cloudera has contributed to the infringement by others of one or more of the claims of the '374 Patent, including at least Claims 1, and 5–6.

71.    Cloudera's infringement of one or more of the claims of the '374 Patent, including at least Claims 1, and 5–6, has been, and continues to be, willful.

72.    Cloudera has been on inquiry notice of the '374 Patent since at least March 20, 2015 when Daisuke Kobayashi was informed that StreamScale was claiming that Jerasure: GF-

Complete and Jerasure versions 2.0 and later infringed claims of the '8-296 Patent.  A simple search would have revealed that the '374 Patent is in the same patent family as the '8-296 Patent.

73.     Cloudera also has known of the '374 Patent and Cloudera's infringement thereof since at least March 8, 2021 when Cloudera received a copy of StreamScale's Complaint for Patent Infringement in the 2021 Lawsuit.  While the 2021 Lawsuit related to Cloudera's CDH product, upon information and belief, the EC technology in CDP is similar to CDH except that Cloudera does not "bundle" ISA-L with CDP.  Instead, Cloudera specifically instructs its customers to download ISA-L for use with CDP, and thereby infringe the Patents-in-Suit.  Despite receiving the complaint in the 2021 Lawsuit, Cloudera did not cease its infringement.

74.     Cloudera obtained additional detailed knowledge of its infringement of the claims of the '374 Patent on or about July 15, 2021 when Cloudera received StreamScale's Preliminary Infringement Contentions in the 2021 Lawsuit, detailing Cloudera's infringement of at least Claims 1, and 5–6 of the '374 Patent, among other claims.  Despite receiving these Preliminary Infringement Contentions, Cloudera did not cease its infringement.

75.     Cloudera obtained additional knowledge of its infringement of the claims of the '374 Patent on or about May 20, 2022 when StreamScale served Cloudera with its Final Infringement Contentions in the 2021 Lawsuit, again detailing how CDH directly infringed the Patents-in-Suit.  Despite receiving these Final Infringement Contentions, Cloudera did not cease its infringement.

76.     Cloudera obtained additional knowledge of its infringement of the claims of the '374 Patent on or about February 27, 2023 when StreamScale served Cloudera with the Expert Report of Dr. Thomas M. Conte Regarding Infringement, detailing how CDH directly infringed the Patents-in-Suit.  Despite receiving this Expert Report, Cloudera did not cease its infringement.

77.     Despite being on inquiry notice of the '374 Patent since at least as early as March 20, 2015, and knowing of the '374 Patent since at least as early as March 8, 2021, Cloudera has continued to infringe one or more claims of the '374 Patent.  At a minimum, the facts plead herein show that Cloudera willfully blinded itself to the '374 Patent, and its infringement of the claims of the '374 Patent.  The facts similarly show Cloudera subjectively believed with a high probability that the Cloudera Infringing Products and Services infringed but took deliberate action to avoid learning of its infringement.

78.     Therefore, Cloudera's infringement of the '374 Patent has been and continues to be willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate, entitling StreamScale to increased damages pursuant to 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

79.     Defendant's acts of infringement have caused damages to StreamScale, and StreamScale is entitled to recover from Defendant the damages sustained by StreamScale as a result of Defendant's wrongful acts in an amount to be determined at trial.

## COUNT 3—INDIRECT INFRINGEMENT OF THE '759 PATENT

80.     StreamScale incorporates by reference the allegations set forth in Paragraphs 1–79 of this Complaint as though fully set forth herein.

81.     In violation of 35 U.S.C. § 271(b), Cloudera is and has been infringing one or more of the '759 Patent's claims, including at least Claims 1, and 5–7, indirectly by inducing the infringement of at least Claims 1, and 5–7 of the '759 Patent by third parties, including for example Cloudera's customers, in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by users of at least the "Cloudera Infringing Products and Services."

82.    Cloudera's affirmative acts of selling and/or distributing Cloudera Infringing Products and Services (or portions thereof), causing Cloudera Infringing Products and Services (or portions thereof) to be manufactured and distributed, providing instructive materials and information concerning operation and use of Cloudera Infringing Products and Services (or portions thereof), including but not limited to instruction on how to download and use ISA-L with CDP to utilize EC technology, and providing maintenance/service for such products or services, induced Cloudera's customers to infringe at least Claims 1, and 5–7 of the '759 Patent.  By and through these acts, Cloudera knowingly and specifically intended the users of Cloudera Infringing Products and Services to infringe at least Claims 1, and 5–7 of the '759 Patent.  Cloudera (1) knew or should have known of the '759 Patent since at least 2015, but at a minimum, no later than March 2021 when StreamScale filed the 2021 Lawsuit, (2) performed and continues to perform affirmative acts that constitute induced infringement, and (3) knew or should have known that those acts would induce actual infringement of one or more of the '759 Patent's claims by users of Cloudera Infringing Products and Services.

83.    Cloudera actively markets and instructs its customers how to use EC Systems using CDP and how to download ISA-L for use with CDP.  For example, Cloudera specifies to its customers how to "[r]un the commands…to install the isa-l library" and how to "[v]erfiy ISA-L is working."[11]  Cloudera also offers its customers an "Installation Guide" on how to install the Cloudera Infringing Products and Services.[12]  Upon information and belief, Cloudera further offers its customers technical support for the Cloudera Infringing Products and Services.

---

[11] *See, e.g.*, https://docs.cloudera.com/cdp-private-cloud-base/7.1.6/scaling-namespaces/topics/hdfs-ec-using-isa-l.html (last visited August 7, 2023).

[12] *See, e.g.*,  https://docs.cloudera.com/cdp-private-cloud-base/7.1.5/installation/topics/cdpdc-installation.html (last visited August 7, 2023).

84.     As explained herein, Cloudera knew or should have known of the '759 Patent prior to this lawsuit being filed and had knowledge of the infringing nature of its activities, and the role of the Cloudera Infringing Products and Services in that infringement of the '759 Patent, yet continues to induce infringement of at least Claims 1, and 5–7 of the '759 Patent by Cloudera's customers.

85.     Therefore, Cloudera has induced others to infringe one or more of the claims of the '759 Patent, including at least Claims 1, and 5–7.

86.     In violation of 35 U.S.C. § 271(c), Cloudera is and has been infringing one or more of the claims of the '759 Patent, including at least Claims 1, and 5–7, indirectly by contributing to the infringement of one or more of the claims of the '759 Patent, including at least Claims 1, and 5–7, by third parties, including for example Cloudera's customers, in this District and elsewhere in the United States.  Direct infringement by, for example, Cloudera's customers occurs by at least the use of the Cloudera Infringing Products and Services.

87.     Cloudera makes and sells software especially made or especially adapted to practice the invention claimed in the '759 Patent, including at least Claims 1, and 5–7, and that (i) is a material part of the invention and (ii) is not a staple article or commodity of commerce suitable for substantial non-infringing use at least because it is specifically designed to perform the claimed functionality.  Any other use of such hardware and/or software would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

88.     Therefore, Cloudera has contributed to the infringement by others of one or more of the claims of the '759 Patent, including at least Claims 1, and 5–7.

89.     Cloudera's infringement of one or more of the claims of the '759 Patent, including at least Claims 1, and 5–7, has been, and continues to be, willful.

90.     Cloudera has been on inquiry notice of the '8-296 Patent family to which the '759 Patent claims priority since at least March 20, 2015 when Daisuke Kobayashi was informed that StreamScale was claiming that Jerasure: GF-Complete and Jerasure versions 2.0 and later infringed claims of the '8-296 Patent.  A simple search prior to launching Accused Products would have revealed the existence of the '759 Patent.

91.     Cloudera also has known of the '759 Patent and Cloudera's infringement thereof since at least March 8, 2021 when Cloudera received a copy of StreamScale's Complaint for Patent Infringement in the 2021 Lawsuit.  While the 2021 Lawsuit related to Cloudera's CDH product, upon information and belief, the EC technology in CDP is similar to CDH except that Cloudera does not "bundle" ISA-L with CDP.  Instead, Cloudera specifically instructs its customers to download ISA-L for use with CDP, and thereby infringe the Patents-in-Suit.  Despite receiving the complaint in the 2021 Lawsuit, Cloudera did not cease its infringement.

92.     Cloudera obtained additional detailed knowledge of its infringement of the claims of the '759 Patent on or about July 15, 2021 when it received StreamScale's Preliminary Infringement Contentions in the 2021 Lawsuit, detailing Cloudera's infringement of at least claims 1, and 5–7 of the '759 Patent, among other claims.  Despite receiving these Preliminary Infringement Contentions, Cloudera did not cease its infringement.

93.     Cloudera obtained additional knowledge of its infringement of the claims of the '759 Patent on or about May 20, 2022 when StreamScale served Cloudera with its Final Infringement Contentions in the 2021 Lawsuit, again detailing how CDH directly infringed the Patents-in-Suit.  Despite receiving these Final Infringement Contentions, Cloudera did not cease its infringement.

94.     Cloudera obtained additional knowledge of its infringement of the claims of the '759 Patent on or about February 27, 2023 when StreamScale served Cloudera with the Expert Report of Dr. Thomas M. Conte Regarding Infringement, detailing how CDH directly infringed the Patents-in-Suit.  Despite receiving this Expert Report, Cloudera did not cease its infringement.

95.     Despite being on inquiry notice of the '759 Patent since at least as early as March 20, 2015, and knowing of the '759 Patent since at least as early as March 8, 2021, Cloudera has continued to infringe one or more claims of the '759 Patent.  At a minimum, the facts plead herein show that Cloudera willfully blinded itself to the '759 Patent, and its infringement of the claims of the '759 Patent.  The facts similarly show Cloudera subjectively believed with a high probability that the Cloudera Infringing Products and Services infringed but took deliberate action to avoid learning of its infringement.

96.     Therefore, Cloudera's infringement of the '759 Patent has been and continues to be willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate, entitling StreamScale to increased damages pursuant to 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

97.     Defendant's acts of infringement have caused damages to StreamScale, and StreamScale is entitled to recover from Defendant the damages sustained by StreamScale as a result of Defendant's wrongful acts in an amount to be determined at trial.

## COUNT 4—INDIRECT INFRINGEMENT OF THE '259 PATENT

98.     StreamScale incorporates by reference the allegations set forth in Paragraphs 1–97 of this Complaint as though fully set forth herein.

99.     In violation of 35 U.S.C. § 271(b), Cloudera is and has been infringing one or more of the '259 Patent's claims, including at least Claims 12–16, and 19, indirectly by inducing the infringement of at least Claims 12–16, and 19 of the '259 Patent by third parties, including for

example Cloudera's customers, in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by users of at least the "Cloudera Infringing Products and Services."

100.   Cloudera's affirmative acts of selling and/or distributing Cloudera Infringing Products and Services (or portions thereof), causing Cloudera Infringing Products and Services (or portions thereof) to be manufactured and distributed, providing instructive materials and information concerning operation and use of Cloudera Infringing Products and Services (or portions thereof), including but not limited to instruction on how to download and use ISA-L with CDP to utilize EC technology, and providing maintenance/service for such products or services, induced Cloudera's customers to infringe at least Claims 12–16, and 19 of the '259 Patent.  By and through these acts, Cloudera knowingly and specifically intended the users of Cloudera Infringing Products and Services to infringe at least Claims 12–16, and 19 of the '259 Patent.  Cloudera (1) knew or should have known of the '259 Patent since at least 2015, but at a minimum, no later than March 2021 when StreamScale filed the 2021 Lawsuit, (2) performed and continues to perform affirmative acts that constitute induced infringement, and (3) knew or should have known that those acts would induce actual infringement of one or more of the '259 Patent's claims by users of Cloudera Infringing Products and Services.

101.   Cloudera actively markets and instructs its customers how to use EC Systems using CDP and how to download ISA-L for use with CDP.  For example, Cloudera specifies to its customers how to "[r]un the commands…to install the isa-l library" and how to "[v]erfiy ISA-L is working."[13]   Cloudera also offers its customers an "Installation Guide" on how to install the

---

[13] *See, e.g.*, https://docs.cloudera.com/cdp-private-cloud-base/7.1.6/scaling-namespaces/topics/hdfs-ec-using-isa-l.html (last visited August 7, 2023).

Cloudera Infringing Products and Services.[14]  Upon information and belief, Cloudera further offers its customers technical support for the Cloudera Infringing Products and Services.

102.    As explained herein, Cloudera knew or should have known of the '259 Patent prior to this lawsuit being filed and had knowledge of the infringing nature of its activities, and the role of the Cloudera Infringing Products and Services in that infringement of the '259 Patent, yet continues to induce infringement of at least Claims 12–16, and 19 of the '259 Patent by Cloudera's customers.

103.    Therefore, Cloudera has induced others to infringe one or more of the claims of the '259 Patent, including at least Claims 12–16, and 19.

104.    In violation of 35 U.S.C. § 271(c), Cloudera is and has been infringing one or more of the claims of the '259 Patent, including at least Claims 12–16, and 19, indirectly by contributing to the infringement of one or more of the claims of the '259 Patent, including at least Claims 12–16, and 19, by third parties, including for example Cloudera's customers, in this District and elsewhere in the United States.  Direct infringement by, for example, Cloudera's customers occurs by at least the use of the Cloudera Infringing Products and Services.

105.    Cloudera makes and sells software especially made or especially adapted to practice the invention claimed in the '259 Patent, including at least Claims 12–16, and 19, and that (i) is a material part of the invention and (ii) is not a staple article or commodity of commerce suitable for substantial non-infringing use at least because it is specifically designed to perform the claimed functionality.  Any other use of such hardware and/or software would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

---

[14] *See, e.g.*,  https://docs.cloudera.com/cdp-private-cloud-base/7.1.5/installation/topics/cdpdc-installation.html (last visited August 7, 2023).

106.    Therefore, Cloudera has contributed to the infringement by others of one or more of the claims of the '259 Patent, including at least Claims 12–16, and 19.

107.    Cloudera's infringement of one or more of the claims of the '259 Patent, including at least Claims 12–16, and 19, has been, and continues to be, willful.

108.    Cloudera has been on inquiry notice of the '8-296 Patent family to which the '259 Patent claims priority since at least March 20, 2015 when Daisuke Kobayashi was informed that StreamScale was claiming that Jerasure: GF-Complete and Jerasure versions 2.0 and later infringed claims of the '8-296 Patent.  A simple search prior to launching Accused Products would have revealed the existence of the '259 Patent.

109.    Cloudera also has known of the '259 Patent and Cloudera's infringement thereof since at least March 8, 2021 when Cloudera received a copy of StreamScale's Complaint for Patent Infringement in the 2021 Lawsuit.  While the 2021 Lawsuit related to Cloudera's CDH product, upon information and belief, the EC technology in CDP is similar to CDH except that Cloudera does not "bundle" ISA-L with CDP.  Instead, Cloudera specifically instructs its customers to download ISA-L for use with CDP, and thereby infringe the Patents-in-Suit.  Despite receiving the complaint in the 2021 Lawsuit, Cloudera did not cease its infringement.

110.    Cloudera obtained additional detailed knowledge of its infringement of the claims of the '259 Patent on or about July 15, 2021 when Cloudera received StreamScale's Preliminary Infringement Contentions in the 2021 Lawsuit, detailing Cloudera's infringement of at least Claims 12–16, and 19 of the '259 Patent, among other claims.  Despite receiving these Preliminary Infringement Contentions, Cloudera did not cease its infringement.

111.    Cloudera obtained additional knowledge of its infringement of the claims of the '259 Patent on or about May 20, 2022 when StreamScale served Cloudera with its Final

Infringement Contentions in the 2021 Lawsuit, again detailing how CDH directly infringed the Patents-in-Suit.  Despite receiving these Final Infringement Contentions, Cloudera did not cease its infringement.

112.    Cloudera obtained additional knowledge of its infringement of the claims of the '259 Patent on or about February 27, 2023 when StreamScale served Cloudera with the Expert Report of Dr. Thomas M. Conte Regarding Infringement, detailing how CDH directly infringed the Patents-in-Suit.  Despite receiving this Expert Report, Cloudera did not cease its infringement.

113.    Despite being on inquiry notice of the '259 Patent since at least as early as March 20, 2015, and knowing of the '259 Patent since at least as early as March 8, 2021, Cloudera has continued to infringe one or more claims of the '259 Patent.  At a minimum, the facts plead herein show that Cloudera willfully blinded itself to the '259 Patent, and its infringement of the claims of the '259 Patent.  The facts similarly show Cloudera subjectively believed with a high probability that the Cloudera Infringing Products and Services infringed but took deliberate action to avoid learning of its infringement.

114.    Therefore, Cloudera's infringement of the '259 Patent has been and continues to be willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate, entitling StreamScale to increased damages pursuant to 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

115.    Defendant's acts of infringement have caused damages to StreamScale, and StreamScale is entitled to recover from Defendant the damages sustained by StreamScale as a result of Defendant's wrongful acts in an amount to be determined at trial.

### COUNT 5—INDIRECT INFRINGEMENT OF THE '10-296 PATENT

116.    StreamScale incorporates by reference the allegations set forth in Paragraphs 1–115 of this Complaint as though fully set forth herein.

117.    In violation of 35 U.S.C. § 271(b), Cloudera is and has been infringing one or more of the '10-296 Patent's claims, including at least Claims 1–8, indirectly by inducing the infringement of at least Claims 1–8 of the '10-296 Patent by third parties, including for example Cloudera's customers, in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by users of at least the "Cloudera Infringing Products and Services."

118.    Cloudera's affirmative acts of selling and/or distributing Cloudera Infringing Products and Services (or portions thereof), causing Cloudera Infringing Products and Services (or portions thereof) to be manufactured and distributed, providing instructive materials and information concerning operation and use of Cloudera Infringing Products and Services (or portions thereof), including but not limited to instruction on how to download and use ISA-L with CDP to utilize EC technology, and providing maintenance/service for such products or services, induced Cloudera's customers to infringe at least Claims 1–8 of the '10-296 Patent.  By and through these acts, Cloudera knowingly and specifically intended the users of Cloudera Infringing Products and Services to infringe at least Claims 1–8 of the '10-296 Patent.  Cloudera (1) knew or should have known of the '10-296 Patent since at least 2015, but at a minimum, no later than March 2021 when StreamScale filed the 2021 Lawsuit, (2) performed and continues to perform affirmative acts that constitute induced infringement, and (3) knew or should have known that those acts would induce actual infringement of one or more of the '10-296 Patent's claims by users of Cloudera Infringing Products and Services.

119.    Cloudera actively markets and instructs its customers how to use EC Systems using CDP and how to download ISA-L for use with CDP.  For example, Cloudera specifies to its customers how to "[r]un the commands…to install the isa-l library" and how to "[v]erfiy ISA-L is

working."[15]   Cloudera also offers its customers an "Installation Guide" on how to install the Cloudera Infringing Products and Services.[16]  Upon information and belief, Cloudera further offers its customers technical support for the Cloudera Infringing Products and Services.

120.    As explained herein, Cloudera knew or should have known of the '10-296 Patent prior to this lawsuit being filed and had knowledge of the infringing nature of its activities, and the role of the Cloudera Infringing Products and Services in that infringement of the '10-296 Patent, yet continues to induce infringement of at least Claims 1–8 of the '10-296 Patent by Cloudera's customers.

121.    Therefore, Cloudera has induced others to infringe one or more of the claims of the '10-296 Patent, including at least Claims 1–8.

122.    In violation of 35 U.S.C. § 271(c), Cloudera is and has been infringing one or more of the claims of the '10-296 Patent, including at least Claims 1–8, indirectly by contributing to the infringement of one or more of the claims of the '10-296 Patent, including at least Claims 1–8, by third parties, including for example Cloudera's customers, in this District and elsewhere in the United States.  Direct infringement by, for example, Cloudera's customers occurs by at least the use of the Cloudera Infringing Products and Services.

123.    Cloudera makes and sells software especially made or especially adapted to practice the invention claimed in the '10-296 Patent, including at least Claims 1–8, and that (i) is a material part of the invention and (ii) is not a staple article or commodity of commerce suitable for substantial non-infringing use at least because it is specifically designed to perform the claimed

---

[15] *See, e.g.*, https://docs.cloudera.com/cdp-private-cloud-base/7.1.6/scaling-namespaces/topics/hdfs-ec-using-isal.html (last visited August 7, 2023).

[16] *See, e.g.*,  https://docs.cloudera.com/cdp-private-cloud-base/7.1.5/installation/topics/cdpdc-installation.html (last visited August 7, 2023).

functionality.  Any other use of such hardware and/or software would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

124.    Therefore, Cloudera has contributed to the infringement by others of one or more of the claims of the '10-296 Patent, including at least Claims 1–8.

125.    Cloudera's infringement of one or more of the claims of the '10-296 Patent, including at least Claims 1–8, has been, and continues to be, willful.

126.    Cloudera has been on inquiry notice of the '8-296 Patent family to which the '10-296 Patent claims priority since at least March 20, 2015 when Daisuke Kobayashi was informed that StreamScale was claiming that Jerasure: GF-Complete and Jerasure versions 2.0 and later infringed claims of the '8-296 Patent.  A simple search prior to launching Accused Products would have revealed the existence of the '10-296 Patent.

127.    Cloudera also has known of the '10-296 Patent and Cloudera's infringement thereof since at least March 8, 2021 when Cloudera received a copy of StreamScale's Complaint for Patent Infringement in the 2021 Lawsuit.  While the 2021 Lawsuit related to Cloudera's CDH product, upon information and belief, the EC technology in CDP is similar to CDH except that Cloudera does not "bundle" ISA-L with CDP.  Instead, Cloudera specifically instructs its customers to download ISA-L for use with CDP, and thereby infringe the Patents-in-Suit.  Despite receiving the complaint in the 2021 Lawsuit, Cloudera did not cease its infringement.

128.    Cloudera obtained additional detailed knowledge of its infringement of the claims of the '10-296 Patent on or about July 15, 2021 when Cloudera received StreamScale's Preliminary Infringement Contentions in the 2021 Lawsuit, detailing Cloudera's infringement of at least Claims 1–8 of the '10-296 Patent, among other claims.  Despite receiving these Preliminary Infringement Contentions, Cloudera did not cease its infringement.

129.   Cloudera obtained additional knowledge of its infringement of the claims of the '10-296 Patent on or about May 20, 2022 when StreamScale served Cloudera with its Final Infringement Contentions in the 2021 Lawsuit, again detailing how CDH directly infringed the Patents-in-Suit.  Despite receiving these Final Infringement Contentions, Cloudera did not cease its infringement.

130.   Cloudera obtained additional knowledge of its infringement of the claims of the '10-296 Patent on or about February 27, 2023 when StreamScale served Cloudera with the Expert Report of Dr. Thomas M. Conte Regarding Infringement, detailing how CDH directly infringed the Patents-in-Suit.  Despite receiving this Expert Report, Cloudera did not cease its infringement.

131.   Despite being on inquiry notice of the '10-296 Patent since at least as early as March 20, 2015, and knowing of the '10-296 Patent since at least as early as March 8, 2021, Cloudera has continued to infringe one or more claims of the '10-296 Patent.  At a minimum, the facts plead herein show that Cloudera willfully blinded itself to the '10-296 Patent, and its infringement of the claims of the '10-296 Patent identified in StreamScale's infringement contentions.  The facts similarly show Cloudera subjectively believed with a high probability that the Cloudera Infringing Products and Services infringed but took deliberate action to avoid learning of its infringement.

132.   Therefore, Cloudera's infringement of the '10-296 Patent has been and continues to be willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate, entitling StreamScale to increased damages pursuant to 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action pursuant to 35 U.S.C. § 285.

133.    Defendant's acts of infringement have caused damages to StreamScale, and StreamScale is entitled to recover from Defendant the damages sustained by StreamScale as a result of Defendant's wrongful acts in an amount to be determined at trial.

## DAMAGES

134.    StreamScale is entitled to, and now seeks to, recover damages in an amount not less than the maximum amount permitted by law caused by Defendant's acts of infringement.

135.    As a result of Defendant's acts of infringement, StreamScale has suffered actual and consequential damages.  To the fullest extent permitted by law, StreamScale seeks recovery of damages in an amount to compensate for Defendant's infringement.  StreamScale further seeks any other damages to which StreamScale would be entitled to in law or in equity.

## INJUNCTIVE RELIEF

136.    Defendant's acts of infringement have caused—and unless restrained and enjoined, Defendant's acts of infringement will continue to cause—irreparable injury and damage to StreamScale for which StreamScale has no adequate remedy at law.  Unless preliminarily and permanently enjoined by this Court, Defendant will continue to infringe the Patents-in-Suit.

## ATTORNEYS' FEES

137.    StreamScale is entitled to recover reasonable and necessary attorneys' fees under applicable law.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, StreamScale demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

StreamScale respectfully requests that the Court enter preliminary and final orders, declarations, and judgments against Defendant as are necessary to provide StreamScale with the following relief:

a.    A judgment that Cloudera has indirectly infringed and/or is indirectly infringing one or more claims of the '8-296 Patent, literally or under the doctrine of equivalents;

b.    A judgment that Cloudera's indirect infringement of the '8-296 Patent has been willful;

c.    A judgment that Cloudera has indirectly infringed and/or is indirectly infringing one or more claims of the '374 Patent, literally or under the doctrine of equivalents;

d.    A judgment that Cloudera's indirect infringement of the '374 Patent has been willful;

e.    A judgment that Cloudera has indirectly infringed and/or is indirectly infringing one or more claims of the '759 Patent, literally or under the doctrine of equivalents;

f.    A judgment that Cloudera's indirect infringement of the '759 Patent has been willful;

g.    A judgment that Cloudera has indirectly infringed and/or is indirectly infringing one or more claims of the '259 Patent, literally or under the doctrine of equivalents;

h.    A judgment that Cloudera's indirect infringement of the '259 Patent has been willful;

i.    A judgment that Cloudera has indirectly infringed and/or is indirectly infringing one or more claims of the '10-296 Patent, literally or under the doctrine of equivalent;

j.    A judgment that Cloudera's indirect infringement of the '10-296 Patent has been willful;

k.    An award for all damages arising out of Cloudera's indirect infringement, together with prejudgment and post-judgment interest, jointly and severally, in an amount according to proof, including without limitation attorneys' fees and litigation costs and expenses;

l.      An accounting of damages and any future compensation due to StreamScale for Cloudera's infringement (past, present, or future) not specifically accounted for in a damages award (or other relief), and/or permanent injunctive relief;

m.     An award of reasonable attorneys' fees as provided by 35 U.S.C. § 285 and enhanced damages as provided by 35 U.S.C. § 284;

n.      The entry of an order preliminarily and permanently enjoining and restraining Cloudera and its parents, affiliates, subsidiaries, officers, agents, servants, employees, attorneys, successors, and assigns and all those persons in active concert or participation with them or any of them, from making, importing, using, offering for sale, selling, or causing to be sold any product falling within the scope of any claim of the Patents-in-Suit, or otherwise indirect infringing or inducing indirect infringement of any claim of the Patents-in-Suit; and

o.      All further relief in law or in equity as the Court may deem just and proper.

Dated: August 9, 2023                          Respectfully submitted,

                                               /s/ Jamie H. McDole
                                               Jamie H. McDole
                                                 State Bar No. 24082049
                                               Phillip B. Philbin
                                                 State Bar No. 15909020
                                               Michael D. Karson
                                                 State Bar No. 24090198
                                               David W. Higer
                                                 State Bar No. 24127850
                                               Grant Tucker
                                                 State Bar No. 24121422
                                               WINSTEAD PC
                                               2728 N. Harwood Street
                                               Suite 500
                                               Dallas, Texas 75201
                                               Tel.: 214.745.5400
                                               Fax: 214.745.5390
                                               Email: jmcdole@winstead.com
                                                        pphilbin@winstead.com
                                                        mkarson@winstead.com
                                                        dhiger@winstead.com
                                                        gtucker@winstead.com

                                               *Attorneys for Plaintiff StreamScale, Inc.*